All rise. We will now telephone the 5th Division's dialogue session. Honorable Justice Justice G. Reyes is the provider. Good morning, ladies and gentlemen. Please have a seat. Page number 14, 3544. All right. Would counsels approach the podium, please? Just as a reminder, the microphone is only for recording purposes. It doesn't amplify, so please keep your voices up loudly so we can hear you. And then if you would identify yourselves and the party you're representing. I'm Gavin Dow from the Office of the State Appellate Defender, and I represent Mr. Hernandez. Assistant State's Attorney Jessica Ball on behalf of the people. All right. So 15 minutes apiece. One time for rebuttal? A few minutes, yes, please. Two or three? Three minutes, please. Three minutes? Okay. All right. Thank you. Counsel, you may proceed. Thank you, Your Honor. May it please the Court, this morning I plan to focus on the first two issues that are discussed in the briefs. First, the counsel of choice issue, and second, the discovery issue. I am prepared to discuss the other two issues if the Court would like me to. Otherwise, I will rest on the arguments in our briefs. Starting with the counsel of choice issue, this case boils down to the proposition that the mere fact that defense counsel has previously represented a witness for the state, even an important one, is not enough on its own to override the defendant's right to counsel of his choosing. So what type of conflict are we dealing with here? Is it a per se conflict? Is it potentially substantial? What kind of conflict are we dealing with here? So the type of conflict we're dealing with is whether or not there's a serious potential for a conflict to arise. You're dealing with a serious potential? We're dealing with a serious potential. There's not an actual conflict in this case. And the Illinois Supreme Court in Holmes and Ortega has explained that the concept of per se conflict does not apply when you're dealing with a counsel of choice violation. That's only when you're dealing with an ineffective assistance, conflict-free counsel allegation by the defendant. So per se conflict is not an issue in this case. The trial court, in considering the motion to disqualify, used the term per se conflict, particularly in the original motion to disqualify. Can we derive from her finding that there was a per se conflict the potential conflict finding that's necessary to begin the disqualification analysis? So as you recognize, there were two different hearings on this. There was the original hearing and then there was the hearing on the motion to reconsider. And at the hearing on the motion to reconsider, the proper legal standards were discussed there. She did mention again per se, but the case that was now cited, People v. Holmes, contains the proper analysis for this motion. I think Ortega lays it out more clearly than Holmes does. The case that the trial court cited, People v. Holmes, is a clear indication that the trial court was now more focused on what the analysis should be. I think that's correct, Your Honor. And the question for this court is, under Ortega, there have to be two things that are true before the trial court has the discretion to disqualify defense counsel. So the first thing that has to be true is there has to be a reasonable basis for finding that either an actual conflict exists or that at least a serious potential for a conflict exists. If there's not a reasonable basis for finding that, you don't even get to the next step. You don't worry about balancing the interests because there's not – the trial court didn't have the discretion to disqualify without that reasonable basis for finding a potential conflict, a serious potential conflict. So do we have to follow that two-step process? Because Ortega also seems to say, you know what, even though it wasn't per se, there was enough there anyway for conflict to be found. Well, Ortega follows the process pretty straightforwardly. It starts first with finding whether or not there was a reasonable basis for finding a serious potential for a conflict. In that case, because you had a situation where a state's witness had diverged confidential information about the case to counsel's brother and passed it along to counsel, that was enough to find a serious potential for a conflict. Then what the court did is it examined whether the trial court's finding that the interests implicated by that potential conflict outweighed the defendant's right to counsel's choice. So it did it in an organized manner. It did step one first, was there a reasonable basis for finding a serious potential for a conflict, and then it moved to step two to decide whether or not the trial court's ultimate disqualification decision was also reasonable, taking into account those interests. But that's my point. Even though they set out the process and they said this is the way it was supposed to determine this, at the same time they said, well, it really doesn't really matter because there's conflict here anyway. I mean, that's basically what the majority said in Ortega. It was the dissent that came out and basically laid out the fact that you still need to follow the two-step process in order to make a determination whether or not there's per se or substantially potential conflict. I guess that's just not how I read Ortega. Whether or not there's a serious potential for a conflict in Ortega is a pretty obvious proposition because, once again, it was essentially conceded that confidential information about that case had been passed to defense counsel. So there's no question, real question, about whether there's a potential conflict there. They did go on and analyze because there had been a waiver involved. They talked about the waiver doesn't cover all of the factors that go in on the second step. So there was an analysis of the second step. Yes, there was, Your Honor. But, as I said, you don't even have to get to the second step unless you can first find that there's a serious potential for a conflict or at least a reasonable basis to find one. And on this record, you can't. And the reason is that for there to be a conflict, there has to be something about that previous representation that is somehow going to limit defense counsel's ability to represent the defendant in the present case. So it's not enough that this prior representation is out there. Is that true even when you're talking about a potential for a conflict? Are you making the standard higher than it really is? No, Your Honor. Obviously, for there to be a potential for a conflict, there has to be the potential that that representation would somehow limit defense counsel's ability. But there still has to be a basis in the record for finding that that potential exists. And for that to happen, there has to be some sort of connection between the cases. There has to be some sort of longstanding relationship between defense counsel and the witness as there was in Holmes. Or something else that would have the potential to limit. Okay. You're kind of extrapolating all the prior holdings to distinguish factually what this case may not be. I don't know that there's a clear holding that says what you're saying. Well, Ontario says that you have to at least have a reasonable basis for finding a serious potential for conflict. And to determine whether or not there's a conflict, we have the ethics rules. So Rule 1.7 discusses duties to clients. Rule 1.9, duties to former clients. And so you have to look at that first to see whether or not a conflict exists or a potential conflict exists. And there's a potential. Is the cross-examination factor going to be in the rules of ethics? I don't think it's expressively laid out, but that's implicit. Because obviously if your ability to cross-examine somebody is going to be limited materially, then that would be a conflict. But we don't have that here, Your Honor. And the reason we don't have that here is that there's no information in the record about how cross-examination might actually be limited in this case. All right. But, you know, Ortega and Holmes in the cases that follow them indicate that the standard here is abuse of discretion. So where specifically did the trial court abuse its discretion, in your view? In my view, it abused its discretion in two places. The first place it abused its discretion was in finding a serious potential for a conflict. Because as the court explained in Ortega, if there isn't a reasonable basis for making that finding, that is an abuse of discretion by definition. The trial court also abused its discretion by determining that the interests that were implicated in the conflict were sufficiently weighty to override Mr. Hernandez's right to counsel choice. And the reason is that no reasonable person would have taken the view that the trial court did. Ortega lays out four factors that courts should consider when deciding whether the interests on one side outweigh the interests on the other. Now, two of those factors, which would be the defendant's interest in the undivided loyalty of counsel, as well as the general judicial interest in maintaining the integrity of the conviction, are not implicated in this case. Because as this court recognizes in Buchanan, when there's a waiver, those essentially go out the window. So what we're trying, what we're talking about here are the other two factors. And those would be the appearance of impropriety, as well as the state's right to a fair trial. Now, as far as the state's right to a fair trial goes, you kind of run into the same problem. Because there's not going to be an issue with the state's right to a fair trial unless there's something about this prior representation that is going to be somehow related to or connected to the case at hand. So if the defense counsel doesn't have anything that defense counsel could potentially use, then there's no risk of the state winning an unfair trial. And the record doesn't disclose anything about the prior representation that would allow someone to reasonably find that there was something in there that could have been used on cross-examination. How do you distinguish Holmes from this case? Well, the easiest way to distinguish Holmes, Your Honor, is the fact that the defense counsel in Holmes admitted that he was going to limit cross-examination of a former client to publicly available matters. But that was the solution being offered to diminish the issue, wasn't it? Your Honor, the Supreme Court's decision specifically cited that limitation as being a reason why there was a potential for conflict. But beyond that, Your Honor, Holmes also involves a very different relationship than the one in this case. In Holmes, you had a relationship going back 12 years. It involved at least two representations. And most critically, counsel admitted in that case that he had had communications with the witness-slash-codefendant within the past five years. And the charged robbery in that case had taken place four years before the hearing. So in other words, there was evidence there that the witness and defense counsel had an ongoing attorney-client relationship around the time of the charged offense. Here we don't have that. Based on the information in the record, Mr. Dixon's relationship with Mr. Galarza ended 11 years or so before it was qualification. They had no communication after that point. So we don't have any sort of a longstanding or ongoing relationship like there was in Holmes. But do we have the type of witness that we have here? I mean, this witness was, as the trial court said, integral. Can't get more integral than this witness, who was a victim himself, and his son is an eyewitness to his son's murder. So that would be relevant when you're balancing the interests, because whether or not the witness is important isn't really going to affect whether or not there's potential for conflict in the first place, except to the extent that it's likely that this witness is going to testify. Then the second step, when you're looking at the State's interest in a fair trial, the importance of the witness to the State would be something that would probably come into play. But again, Your Honor, without some basis for thinking that defense counsel would have had some sort of unfair advantage, because there was some relationship to the case, because he had represented Galarza around the time of the offense, or around the time of Mr. Galarza's cooperation with the federal authorities. Without something like that, there's not a real threat to the State's interest in a fair trial. Getting back to the use of discretion standard, so originally when the argument was made before the trial court, it was under a per se conflict. Then in the motion that we consider, the standard was changed. So the trial court had an opportunity to consider both standards, where in some cases, particularly like Holmes, that wasn't the case. It was per se conflict, that was the argument that was presented to the trial court, and that was the determination of the trial court based on a per se conflict. Here, the trial court at least had an opportunity to consider the other standard. So given the fact that that was presented to the trial court, is there still an abuse of discretion here? Our argument that there was an abuse of discretion doesn't have anything to do with the concept of per se conflict. The reason you stated, Your Honor, the trial court at the motion that we consider was apprised of the proper legal standard. So we're not relying on that. But once again, my definition in abuse of discretion is whether or not there's a reasonable basis for finding this. It's sort of like reviewing a verdict. You look at the information that's been presented and decide whether it would have been reasonable to draw the conclusion that the trial court in this case drew. And it would not have been reasonable for the reason that there wasn't anything there other than the fact of the prior representation. It was not shown to have been connected to the charged case. It was not shown to have been an ongoing or a lengthy relationship. Okay, let's pick up there. I mean, this whole thing, the different theories involved in here is that Mr. Flagle, he was a member of a gang who turned into what the gang considered a snitch. I mean, his criminal history, his status as a gang member, I mean, are we to ignore all that too in considering that the defendant's attorney represented him in three cases? That's part of his history. There isn't an apparent potential conflict of interest. Well, a few things about that, Your Honor. First of all, Mr. Hernandez's relationship with the gang did not rise until after this representation had terminated. I'm talking about the representation. I'm sorry, I understand, Your Honor. As far as Mr. Garanza goes, when you look at the evidence that ultimately comes out at trial, you don't see anything about what's happening before about 2003. It would have been two years after this representation was over. So all of this stuff that's relevant, if Mr. Dixon had represented Mr. Garanza at the time he was cooperating with federal authorities, for example, we'd have a different case. We'd absolutely have a different case because that would have some sort of a connection to this one. But that's not what we have. Everything about Mr. Garanza's past that was relevant, that was material in this prosecution, came after the attorney-client relationship was over. And that means there's not a basis, a reasonable basis for finding a serious potential for a conflict. All you can really do is speculate that maybe something happened. But there's no affirmative indication of what that could have been or how that would have affected Mr. Dixon's ability to represent Mr. Hernandez. All right. Why don't you sum up and then take some time for rebuttal. Because the record did not provide a basis for disqualifying Mr. Dixon and because of the other reasons that we discussed in our brief, I just put you to release Mr. Hernandez's conviction. Thank you. Good morning. Morning. Your Honors, the trial court acted reasonably here when it disqualified Liam Dixon. It was not overreaching for the trial court to find that where an attorney previously represented a victim, but at the very least it constituted a serious potential for conflict, where those same set of facts is a per se conflict when a defendant alleges ineffective assistance of counsel. The state and the trial court did not manufacture a conflict in this case. It existed simply by virtue of the players that were involved. You would have had a situation here where the defense attorney would have been cross-examining his prior client, where the prior client hadn't waived the conflict, or his attorney-client privilege. Well, what about the fact that counsel, Mr. Dixon here, didn't even recall, I mean he knew he had represented the witness here, but didn't even recall the case or what it pertained to, all he knew was that he had represented him. The trial court considered that. As it did, it considered all of the competing interests at stake  and it's not an unreasonable decision, especially where the victim didn't waive the conflict, where there's still an appearance of impropriety, and a very large risk of reversal on appeal. For defense counsel to say that there's no risk of reversal because the defendant waived the conflict, it's fanciful. Because what you have is a defense attorney with a conflict advising his client to waive that conflict, which is going to result in a reversal on appeal. As I indicated before, when a defendant claims ineffective assistance of counsel because of a conflict, it is a per se conflict. It's an automatic reversal. And that wouldn't have been fair to the defendant either in this case. He was paying for an attorney. But in the other cases, particularly in Holmes, counsel who is going to be representing, or potentially going to be representing the defendant, was quite specific in terms of the type of relationship that they had and the type of cases that he represented the other party in, and the fact that there was a communication between the witness and the potential counsel prior to the trial. Those were the facts that were specific to that case. One distinction is that in that case it wasn't the victim who had the prior relationship with the attorney. It was a witness. And there is a large distinction there, one that results in a per se conflict, whereas it wouldn't have in Ortega because it was a prosecution witness, not just, not, I'm sorry, just a witness, not a victim. Also, while those cases, that case may be factually distinguishable, it never, and those were the facts in that case, it never indicated that any of those things were prerequisites to a finding of a serious potential for conflict. They didn't need to have, there's no indication anywhere that a continuing relationship has to be occurring between the prior client and the attorney. It's the fact of that prior relationship and that representation alone, which is the conflict. There are no prerequisites that those things have to happen, and when you have an attorney who's previously represented a victim, you don't need that factual link. The victim alone provides the connection. And in this case, while there doesn't need to be a factual link, there is an indication in the record that there may be a factual link. Those prior drug cases may have been related to the reason why Mr. Galarza became a confidential informant for the FBI, and it was, as you said, the reason why he was a target in this case, because he was a snitch. And the trial court may not have been aware of that fact when she made the decision to disqualify him, but this court gets to look at the record as a whole, and while we can't know for sure, it's impossible to know for sure because the situation didn't play out, it certainly does support the trial court's decision. And the Illinois Supreme Court recognized that this is the one area of the law where speculation is allowed, because it's really all we have. Counsel here was even willing to get somebody else to cross-examine the witness, which may have gone to that issue. There may have been some information that counsel was privy to, and therefore he was going to have someone else cross-examine the witness. Doesn't that correct the error? Well, I think it's important to phrase that question as to where we are in the proceedings, and I think the proper question at this point is whether the trial court abused its discretion in determining that co-counsel was not an appropriate remedy, because the trial court did consider that as an option. She didn't ignore it. She didn't push it aside. She listened to everything at the hearing and considered that as an option, but she knew that defense counsel was still going to sit at counsel table throughout the cross-examination, was still going to handle everything at trial except for the limited, for that cross-examination. So you still have the appearance of impropriety. You still have a victim not waiving the conflict. You still have the huge risk of reversal on appeal. So the trial court's decision to not accept that as an appropriate remedy is not unreasonable. She didn't abuse her discretion. And the trial courts are given broad latitude in making these decisions, because, again, they're looking into the future, trying to figure out potentially what down the line could be an issue, could be a conflict. And those decisions are entitled to a large degree of deference on appeal. And there's nothing here that indicates what the trial court did was an abuse of that discretion. She very fairly determined that it was a serious potential for conflict, and then she properly considered all of the Ortega factors, the undivided loyalty of counsel. Again, defendant's waiver can't overcome that. You have to have the victim also waiving that conflict, and the likelihood of reversal on appeal also can't be resolved by the defendant's waiver alone. The state's right to a fair trial, you've got a defense attorney who may have inside information to help mount a defense, to help in cross-examining the victim. It may have been why, and it's been said in other Supreme Court cases, that may have been why the defendant wanted this attorney to represent him. He had information. He may have had information. It was a potential for him to have an unfair advantage at this trial in the state. None of that was ever provided to the trial court. The trial court didn't initially consider that. At that first motion, that's what he put aside and said, I'm not really caring about if there's unfairness to the state. The trial court said she was really focused on whether it would be fair to the defendant to have this attorney represent him. Then when it was the hearing on the motion to reconsider, that's when the trial court said, you know what, I should have also considered whether this would be fair to the state. And she did consider it at that point. And going back to the motion to reconsider, initially when the issue was raised, it was per se confident. Now the motion to reconsider comes in, and then now the view is that it's a serious potential.  And on a motion to reconsider, you're only supposed to consider what law or evidence that was previously ruled on, not bring something brand new to the trial court to consider, which is actually basically what was happening there in this motion to reconsider. I think it's actually a benefit that the trial court considered everything in both facets because she had all the information then, all of the arguments presented, all the possible scenarios, and actually considered the situation and the issue twice. And in neither case does it show anywhere in the record that she abused her discretion. Again, there's that great degree of latitude that they're afforded, these trial court judges who have to look into the future to make these potential conflict determinations, and a large degree of deference that they're afforded. And there's still a huge issue about the appearance of impropriety, where you have an attorney who would have been cross-examining his prior client who never waived the conflict. We can't get around that. And the trial court recognized that, and in spite of the other suggestion of co-counsel, determined that it wouldn't have been a proper remedy. And even if this court were to weigh those factors differently, you can't reverse based on that. In fact, the Supreme Court recognized that the trial court judges are in the better position to weigh those Ortega factors as they're presented at the trial court level. This case is a little different than maybe Buchanan in one significant way, I think, is that this motion to disqualify came towards the outset of this case, right? Absolutely. This came at the very beginning. And in Buchanan, it was days before trial. It was on the eve of trial. So very different here. And it came about because defense counsel – can you tell me a little bit about if actually defense counsel notified the state? Or how did they come to record? In this case? Yes. Defense counsel himself brought it to somebody's attention. I apologize off the top of my head. I don't recall, but it was brought to the attention that defense counsel had previously represented the defendant in three cases beforehand. And that's how it all came about and preceded the motion to disqualify. All right. In the record, and I don't remember if it was at the very beginning or in the motion we considered, the trial court did indicate when counsel said that he didn't remember, particularly the cases where he was representing the witness, said that I find Mr. Dixon's statements credible. But yet still said that, you know, she thought that he couldn't properly cross-examine. Well, if she found him to be credible, yet at the same time saying that he can't cross-examine, isn't she saying two different things? I think she's weighing all the factors. Right, but isn't she – because that's what the basis of her ruling was. At the end of it, she said finally that she's not going to allow him to cross-examine, even though he says I don't remember, you know, what happened in those cases or what the extent of my representation of the witness was. It wasn't just that she didn't allow him to cross-examine. She didn't allow him to represent at all because there was the option of co-counsel to be brought in for that purpose. Right. So while she didn't distrust what the attorney was saying, she still had to factor all of the other things into consideration. It wasn't just whether or not he remembered. And that would be the key, the turning point, the change to her decision. There were a number of factors to consider. Again, the state's right to a fair trial, the undivided loyalty of counsel, I'm sorry, the appearance of impropriety. The court had to consider the integrity of the judicial system. If it came out that the jury, that the public learned that this attorney had previously represented the victim, and not just the victim, but the eyewitness to his son's murder, how that would appear, that had to be a factor. And again, the likelihood of reversal on this case, that alone wouldn't be fair to the defendant who was paying for an attorney in this case. So the one issue that you brought up was one factor that the trial court considered that there were others that had to be considered. And she did properly consider them all, and they weighed in favor. They overcame the presumption of his right to counsel of choice. I'm not sure if there's any other questions as to that issue or the others. If not, the people would respectfully rest on their breath and respectfully request this honorable court to affirm the defendant's convictions. Thank you. All right. First, Your Honors, just to clarify a couple of points about the record. Defense counsel did bring this to the state's attention, which is why the state filed its disqualification motion. Second, the cases at issue here were, I believe, aggravated discharge cases for which Mr. Galarza was sent to prison. And he subsequently came out of prison having served that sentence before beginning his work with the federal government. As far as the appearance of impropriety goes, I think there are two very important points. The first one is that we don't even talk about the appearance of impropriety unless we can say there's a reasonable basis for making the finding a serious potential for a conflict. The second thing about the appearance of impropriety is that there's no indication that the fact of this prior representation is going to come out in court. There's no reason that it would be relevant. The state has not suggested a reason that it would be relevant, so it's very difficult to understand how that appearance would come to pass. And lastly, I'm not aware of a case that has held the mere fact that a prior representation is good enough to disqualify counsel. I don't think there has been one, and I don't think that that would be a correct statement of the law. People versus homes, I think, gives the best illustration of what a potential conflict looks like because you have a situation there where there isn't necessarily an indication that these cases are connected, but you do have this relationship with, this ongoing relationship with the attorney where the potential for a conflict might arise. You don't have that here, so you don't have something from which you could say there's a serious potential for a conflict. Let's begin. I want to thank both counsels for a well-articulated manner and well-briefed case. This court will take it under advisement and be submitting something shortly. Thank you very much.